IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BILLY MILES,<br><br>    Plaintiff,<br><br>v.<br><br>DR. PERCY MYERS,<br><br>    Defendant. | Case No. 23-cv-3572-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Billy Miles, an inmate of the Illinois Department of Corrections who is currently incarcerated at Menard Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights while at Pinckneyville Correctional Center. Miles's Complaint alleged that Dr. Percy Myers was deliberately indifferent in treating his chest pain (Docs. 1, 11).

This matter is currently before the Court on Dr. Percy Myers's motion for summary judgment for Miles's failure to exhaust his administrative remedies (Docs. 30, 31). Dr. Myers also filed a notice to Miles advising him that his failure to respond to the pending motion could result in a judgment for Dr. Myers (Doc. 32). Prior to Miles's deadline to respond to the motion, on August 14, 2024, Miles filed a motion to stay the case (Doc. 34). He asked to stay all of his pending cases before the Court because he was in segregation (*Id.*). On August 15, 2024, the Court denied Miles's motion but granted him an extension of time to respond to Dr. Myers's motion for summary judgment (Doc. 35).

The Court found that Miles failed to demonstrate that he was unable to file pleadings while housed in segregation and also found that he was capable of responding to the pending dispositive motion. The deadline to file a responsive pleading was reset for October 1, 2024 (Doc. 35). As of this date, Miles has failed to file a response.

### FACTUAL BACKGROUND

On November 2, 2023, Miles filed his Complaint alleging deliberate indifference to his chest pain while housed at Pinckneyville Correctional Center (Doc. 1). Miles alleged that on December 14, 2021, he was placed in the prison's healthcare unit for a clogged artery in his left leg after complaining about chest pain (Doc. 11). While housed in the healthcare unit, he spoke to Dr. Percy Myers on numerous occasions and complained of chest pain. But Dr. Myers would simply reply "one thing at a time." He directed Miles to submit a sick call request for his chest pain after he was released from the healthcare unit (*Id*.). Miles alleged that at the time he filed his Complaint he still had chest pain and received no care for his pain.

After a review of the Complaint pursuant to 28 U.S.C. § 1915A, Miles was allowed to proceed on the following count:

Count 1:    Eighth Amendment deliberate indifference claim against Dr. Myers for failing to treat Miles's chest pain.

(Doc. 11, p. 4).

Although Dr. Myers points to four grievances that are potentially relevant to Miles's claim, the Court finds only two of those grievances sought to grieve the claim in the Complaint.

**January 30, 2022 Grievance (#425-02-22):**

On January 30, 2022, Miles submitted an emergency grievance about chest pain that he had been experiencing since December 14, 2021 (Doc. 31-1, p. 20). Miles noted that he was placed in the healthcare unit on that date for a clogged artery in his left leg (*Id.*). While in the healthcare unit, he experienced chest pain. Although he thought the chest pain would stop, Miles noted that the pain never stopped. On January 6, 2022, Miles submitted a sick call request about the chest pain (*Id.* at p. 21). On January 8, 2022, the healthcare unit found nothing wrong with him but provided him with an aspirin prescription for three days (*Id.*). On January 11, 2022, Miles received a call pass to see Dr. Myers on January 12, 2022. But on the scheduled date, Dr. Myers refused to see Miles. At the time of his grievance, Miles noted that he was still experiencing chest pain both day and night (*Id.*).

On February 3, 2022, the Chief Administrative Officer ("CAO") received Miles's grievance and marked it as an emergency to be expedited through the grievance officer (*Id.* at p. 20). Although Dr. Myers fails to attach the grievance officer's response to his motion, Miles attached the grievance and response to his Complaint (Doc. 1, pp. 11-15). On March 10, 2022, the grievance officer reviewed Miles's grievance. The grievance officer noted that the healthcare unit responded to the grievance and denied that Miles complained of chest pain while in the infirmary (*Id.* at p. 13). Per the Healthcare Unit Administrator ("HCUA"), Miles was in the healthcare unit for issues with his leg and never mentioned to the doctor that he had chest pain (*Id.*). The HCUA also denied that Miles had been to the nurse sick call line related to his complaints but noted that he was on the cardiac clinic calendar to be seen in March (*Id.*). The HCUA directed Miles to either submit a nurse sick call request or inform security if he felt his pain was an emergency (*Id.*). In light of the HCUA's response, the grievance officer denied the grievance (*Id.*). On March 11, 2022, the CAO concurred with the findings (*Id.*).

On April 10, 2022, Miles marked the grievance for an appeal to the Administrative Review Board ("ARB"). The ARB received the grievance eight days later. The ARB noted that the grievance was for medical treatment, noted the date of December 14, 2021, and noted that Dr. Myers refused to see Miles for chest pain (Doc. 31-1, p. 19). The ARB returned the grievance, finding that it was untimely (*Id.*). The ARB noted that Miles did not meet the 30-day timeframe for appealing the grievance after the concurrence by the CAO.

**April 4, 2022 Grievance (#977-04-22)**

On April 4, 2022, Miles submitted another grievance regarding his chest pain. In this grievance, Miles alleged that on March 8, 2022, Dr. Myers refused to provide medical care for his neck and chest pain (Doc. 31-1, p. 7). Miles alleged that he had neck and chest pain daily, but Dr. Myers only offered an EKG for his symptoms. Miles noted that he did not want an EKG because he had already received one (*Id.*). Miles complained that Dr. Myers did not know what he was doing, that he was incapable of providing appropriate care, and he continued to deny Miles a referral to a neck and chest specialist (*Id.* at pp. 7-8). Miles noted that he believed Dr. Myers was retaliating against him because Miles refused the EKG test (*Id.* at p. 8). Miles believed the test was a waste of time and noted that he had the right to refuse a specific medical test, but he alleged Dr. Myers continued to retaliate against him (*Id.*).

Miles complained that he previously had an issue with an artery and now he was complaining of neck and chest pain, but Dr. Myers refused to do anything about his pain despite his knowledge of Miles's problems with his arteries (*Id.*). Miles noted that on December 15, 2021, he told Dr. Myers about his neck and chest pain, but Dr. Myers refused to give him any medical care (*Id.*). He noted that from December 14, 2021, until January 5, 2022, he was in the healthcare unit and told Dr. Myers about the pain in his chest. But Dr. Myers told him to focus on one condition at a time (*Id.*). Miles asked a nurse how he could obtain care for his chest pain, and she told him he would have to submit another sick call request once he was back in general population (*Id.*). Miles noted that Dr. Myers would not provide him with any care for his chest pain during Miles's entire stay in the healthcare unit (*Id.*).

Miles's grievance was deemed an emergency by the CAO and reviewed by the grievance officer. Per the HCUA's response, Miles's labs were normal, and he was scheduled for the hypertension clinic. On April 5, 2022, he also saw Dr. Myers, who instructed Miles on the importance of taking his blood thinner medications in a consistent fashion (*Id.*). The response noted that Dr. Myers did not believe that an outside referral was medically indicated, but he did provide Miles with compression stockings for circulation (*Id.*). The grievance was denied by the grievance officer. On April 15, 2022, the CAO concurred with the decision.

Miles also appealed this grievance to the ARB. On May 10, 2022, the ARB received the grievance. The ARB reviewed the grievance on the merits but ultimately denied the grievance because Miles was receiving medical care

4

and specific treatments were at the discretion of the medical provider (*Id.* at p. 5).

Although Dr. Myers identified two additional grievances in Miles's grievance file, the Court does not find those grievances relevant for the purpose of Miles's claim. Miles's February 14, 2022 grievance (#590-02-22) alleged that Dr. Myers refused to provide Miles with a lower bunk, lower deck permit for his clogged artery in his leg, despite his leg still being swollen (Doc. 31-1, pp. 16-17). Although the grievance noted that Miles was released from the healthcare unit on January 5, 2022, he only complained of his need for permits for his leg (*Id.*). Miles's February 16, 2022 grievance (#620-02-22) complained that a nurse failed to refill his ant-fungal cream (*Id.* at pp. 11-12).

## LEGAL STANDARDS

"Summary judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [the defendant] is entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. §1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that "[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion must occur before the suit is filed.

*Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). A plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.* Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005). Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

Under *Pavey v. Conley*, 544 F.3d 739, 740-41(7th Cir. 2008), the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Seventh Circuit set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id.* at 742.

### A. Illinois Exhaustion Requirements

As an IDOC inmate, Miles was required to follow the regulations contained in IDOC's Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claim. 20 Ill. Administrative Code §504.800 *et seq*. The grievance procedures first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. 20 Ill. Admin. Code §504.810(a). The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 Ill. Admin. Code §504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. 20 Ill. Admin. Code §504.820(a). The Grievance Officer will review the grievance and provide a written response to the inmate. 20 Ill. Admin. Code §504.830(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer within two months after receipt of the grievance, when reasonably feasible under the circumstances." 20 Ill. Admin. Code §504.830(e). "The Chief Administrative Officer shall review the findings and recommendation and advise the offender of his or her decision in writing." *Id.*

If the inmate is not satisfied with the CAO's response, he or she can file an appeal with the Director through the ARB. The grievance procedures specifically state, "[i]f, after

receiving the response of the Chief Administrative Officer, the offender still believes that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the Administrative Review Board within 30 days after the date of the decision." 20 Ill. Admin. Code §504.850(a). The inmate shall attach copies of the Grievance Officer's report and the CAO's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 Ill. Admin. Code §504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within six months after receipt of the appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 Ill. Admin. Code §504.850(e).

The grievance procedures allow for an inmate to file an emergency grievance. In order to file an emergency grievance, the inmate must forward the grievance directly to the CAO who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. 20 Ill. Admin. Code §504.840(a). If the CAO determines the grievance should be handled on an emergency basis, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him what action shall be taken. 20 Ill. Admin. Code §504.840(b). If the CAO determines the grievances "should not be handled on an emergency basis, the offender shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process." 20 Ill. Admin. Code §504.840(c). When an inmate

appeals a grievance deemed by the CAO to be an emergency, "the Administrative Review Board shall expedite processing of the grievance." 20 Ill. Admin. Code §504.850(f).

## ANALYSIS

Miles was provided with notice of Dr. Myers's summary judgment motion and informed of the consequences of failing to respond to the motion (Doc. 32). Miles was informed that his failure to respond would amount to an admission of the facts of Dr. Myers's motion (Doc. 32, p. 2). Prior to Miles's deadline to file a response, he filed a motion seeking a stay in several of his pending cases (Doc. 34). He noted that he was in segregation and requested that all of his cases be put on "hold" (*Id.* at p. 2). The Court denied Miles's motion, finding that he failed to demonstrate that he was unable to respond to the pending motion for summary judgment while in segregation (Doc. 35). Miles's deadline to file a response was extended to October 1, 2024. As of this date, however, Miles has failed to file a response.

Pursuant to SDIL Local Rule 56.1(g) "all material facts…shall be deemed admitted for purposes of summary judgment unless specifically disputed." Because Miles failed to respond to Dr. Myers's statement of facts, the Court accepts Dr. Myers's statement of facts as true. *Parra v. Neal*, 614 F.3d 635, 636 (7th Cir. 2010) (citing *Cracco v. Vitran Exp. Inc.*, 559 F.3d 625, 632 (7th Cir. 2009); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003)).

The admission of the material facts, however, does not automatically grant Dr. Myers's motion for summary judgment; he must still demonstrate that he is entitled to judgment as a matter of law. *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). And Dr.

Myers falls short of demonstrating that Miles failed to exhaust his administrative remedies against him.

Dr. Myers makes much of the fact that Miles's January 30, 2022 grievance does not specifically mention Miles talking to Dr. Myers during Miles's stint in the healthcare unit. Dr. Myers's parses out the portion of the grievance that mentions Dr. Myers, arguing that Dr. Myers is only mentioned in Miles's claim that he refused to see Miles in January after his release from the healthcare unit (Doc. 31-1, p. 20). But Miles's grievance does mention his placement in the healthcare unit from December to January and notes that he had chest pain. Although he did not specifically mention speaking to Dr. Myers while in the healthcare unit, he did provide enough information to put grievance officials on notice that he was complaining about Dr. Myers.

Exhaustion is not intended to provide individual notice to each prison official who might later be sued; it is designed to provide the prison with notice of the problem and give them an opportunity to fix it. *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011) (citing *Jones v. Bock*, 549 U.S. 199, 219 (2007)); *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). As such, an inmate must provide enough information to serve the grievance's function of giving "prison officials a fair opportunity to address [an inmate's] complaints." *Maddox*, 655 F.3d at 722. Although Dr. Myers argues that Miles failed to provide enough information to put officials on notice that he was complaining about Dr. Myers's treatment during Miles's stay in the healthcare unit, the grievance response clearly shows that officials were aware of the nature of Miles's complaint. The grievance officer's response (Doc. 1, p. 13) indicates that the grievance officer spoke to the HCUA, who

stated that Miles never "mentioned to the MD or nurse his chest hurt." (*Id.*). Clearly, the grievance official investigated whether Dr. Myers was aware of Miles's chest pain during his time in the healthcare unit. Further, the ARB's return of grievance form notes that Miles's grievance was about his medical treatment on December 14, 2021, when he entered the healthcare unit, and Dr. Myers's refusal to treat his chest pain (Doc. 31-1, p. 19). Although Miles did not specifically state that he complained to Dr. Myers while in the healthcare unit, as he did in his Complaint, he provided enough information for grievance officials to investigate whether Miles received care from Dr. Myers for his chest pain during that time period. Thus, the grievance served its purpose in notifying officials of Miles's issues with Dr. Myers.[1]

Miles's April 4, 2022 grievance also exhausted his claim against Dr. Myers. This grievance specifically mentions Miles's stay in the healthcare unit and his complaints to Dr. Myers regarding his chest pain (Doc. 31-1, pp. 7-8). In fact, a portion of his grievance tracks identically with Miles's Complaint. His grievance alleges that he complained about chest pain to Dr. Myers while in the healthcare unit for his clogged artery and Dr. Myers kept telling him "one thing at a time" (*Id.* at p. 8). Although Dr. Myers argues that Miles was merely providing "background for [his] true complaint" (Doc. 31, p. 7), arguing that

---

[1] Miles's January 30, 2022 grievance was returned to him by the ARB as untimely. The CAO signed his concurrence on March 16, 2022 and Miles signed his appeal on April 10, 2022. The ARB received the grievance on April 18, 2022 and rejected it as untimely. But Dr. Myers concedes that the grievance could be considered timely (Doc. 31, p. 3 n. 3). He does not dispute that the grievance was fully exhausted and only challenges whether the substance of the motion exhausted Miles's claim against him (*Id.*). The Court finds that the grievance did exhaust the claim against Dr. Myers.

11

the nature of the grievance was only Dr. Myer's conduct on March 8, 2022, there is simply nothing in the record that supports this contention. Miles's grievance clearly grieved Dr. Myers's treatment of Miles during his time in the healthcare unit. Dr. Myers also argues that the grievance was untimely as to Miles's claim for medical treatment in December and January because it was submitted over 60 days after Miles's stay in the healthcare unit. But at no point in the grievance process did any grievance official reject the grievance as untimely. "A procedural shortcoming like failing to follow the prison's time deadlines amount to a failure to exhaust only if prison administrators explicitly relied on the shortcoming." *See Maddox*, 655 F.3d at 722. Both the prison grievance officials and the ARB ruled on the merits of Miles's grievance. The grievance was never rejected on procedural grounds. Thus, the grievance exhausted the possible claims against Dr. Myers, including his treatment in December 2021.

## CONCLUSION

For the reasons stated above, Dr. Myers's motion for summary judgment (Docs. 30, 31) is **DENIED**.

**IT IS SO ORDERED.**

DATED: November 26, 2024

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**