**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

BILLY MILES,

        **Plaintiff,**

v.

        Case No. 3:23-CV-03572-NJR

PERCY MYERS,

        **Defendant.**

## <u>MEMORANDUM AND ORDER</u>

**ROSENSTENGEL, District Judge:**

Plaintiff Billy Miles, an inmate of the Illinois Department of Corrections who is currently incarcerated at the Joliet Treatment Center, brings this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional right to adequate medical care while at Pinckneyville Correctional Center ("Pinckneyville"). The matter is before the Court on a motion for summary judgment brought by defendant Percy Myers, a medical doctor at Pinckneyville. For the following reasons, the motion for summary judgment motion is granted, and the case will be dismissed.

### BACKGROUND

Miles filed a complaint without the assistance of counsel on November 8, 2023, and named several corrections officials as defendants. After the screening required by 28 U.S.C. § 1915A(a), Miles was allowed to pursue a single claim based on Dr. Percy Myers's alleged deliberate indifference to his chest pain. (*See* Docs. 1, 11).

On November 10, 2025, Dr. Myers moved for summary judgment. (Doc. 42). Miles

did not respond to the motion, even after the Court ordered him to show cause why the motion should not be deemed uncontested. (Doc. 46). Accordingly, the Court accepts Dr. Myers's statement of facts as true. SDIL LR 56.1(g); *Parra v. Neal*, 614 F.3d 635, 636 (7th Cir. 2010) (citing *Cracco v. Vitran Exp. Inc.*, 559 F.3d 625, 632 (7th Cir. 2009); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003)).

Miles was transferred to Pinckneyville on November 1, 2021. (SMF ¶ 5). He had not previously experienced any heart issues. (*Id.* ¶ 6). On December 14, 2021, Miles reported to Dr. Myers that he had pain and swelling in his left leg. (*Id.* ¶ 12). Concerned that Miles might have a blood clot, Dr. Myers sent Miles to Pinckneyville Community Hospital for testing. (*Id.* ¶¶ 13-15). At the hospital, Miles denied experiencing cardiovascular problems and medical staff did not detect any. (*Id.* ¶ 17). However, the hospital providers did confirm the blood clot. (*Id.* ¶¶ 18-19). On his return from the hospital, Miles was transferred to an isolation room in the prison's health care unit, where he was treated by Dr. Myers and a nurse practitioner. (*Id.* ¶¶ 22-26). On December 15, 2021, Dr. Myers noted that Miles's heart rhythm was normal and that Miles needed anticoagulation medication for the blood clot. (*Id.* ¶ 26). He also urged Miles to keep his legs elevated. (*Id.*).

Miles remained in the prison's health care unit until January 5, 2022. (*Id.* ¶ 86). During his stay, nurses checked on him at least three times a day, and he could request a nurse by pressing a button. (*Id.* ¶¶ 27-28). According to Miles's medical records, he did not report or display any discomfort or distress, except for occasional leg pain. (*Id.* ¶¶ 31-85). Dr. Myers visited him at several points to order additional testing, provide a

compression stocking for his leg, and adjust his medications. (*Id.* ¶¶ 44, 47, 66). Dr. Myers discharged Miles on January 5, 2022, writing in his medical notes that Miles's condition was stable, he would continue most of the medications he had been prescribed while in the infirmary, and he would be enrolled in the prison's general medicine chronic clinic. (*Id.* ¶ 86).

On January 8, 2022, Miles reported to a nurse that he was experiencing chest pain. (*Id.* ¶ 92). Miles walked to the health care unit, where the nurse administered an EKG and informed him that he was not having a heart attack. (*Id.* ¶¶ 94-95). He did not see Dr. Myers that day, but Dr. Myers reviewed his EKG results a few days later. (*Id.* ¶¶ 96-97). Miles's medical records do not indicate who ordered the EKG or why. (*Id.* ¶ 90). Although the EKG showed that Miles had "extra heartbeats," in Dr. Myers's medical judgment, this finding was not related to chest pain, and was a harmless condition that would resolve on its own. (*Id.* ¶ 99). He also concluded that no follow-up appointment was needed due to the absence of an acute diagnosis. (*Id.* ¶ 100).

Miles did not complain of chest pain again until March 8, 2022, when he saw Dr. Myers regarding foot pain he had been experiencing. (*Id.* ¶ 110). Dr. Myers told Miles that as a first step, he needed an EKG to rule out heart issues. Miles became argumentative and refused to get an EKG. (*Id.* ¶¶ 112-114). Miles testified at his deposition that Dr. Myers told him to submit a sick call request to his nurse when he experienced chest pain, and they would give him an EKG, but Miles disagreed that an EKG would be necessary every time his chest hurt. (*Id.* ¶¶ 117-18).

On March 11, 2022, Miles submitted a request to be seen for chest pain. (*Id.* ¶ 118).

On March 13, 2022, a nurse reported that Miles showed no signs of obvious discomfort and that Miles again was argumentative about the need for an EKG; security ultimately removed him from the medical facility. (*Id.* ¶ 119). Miles again complained of chest pain on March 27, 2022, and was seen by a nurse. The nurse did not detect any obvious discomfort or concerning vital signs. (*Id.* ¶ 121). Again, Miles became argumentative and was removed from the medical unit by security. (*Id.*).

On April 5, 2022, Miles saw Dr. Myers after he complained of swelling in his left leg. (*Id.* ¶ 123). Assessing that Miles had a prior history of blood clots, Dr. Myers determined that he needed bloodwork, compression stockings, a topical steroid, an antifungal medication, and Tylenol. (*Id.* ¶ 126). Dr. Myers did not see Miles again after that date. (*Id.* ¶ 127).

Miles complained of chest pain on April 27, 2022, and he saw a physician assistant the next day. (*Id.* ¶¶ 130-31). The physician assistant wrote in Miles's chart that an EKG from the previous evening showed a normal heart rhythm and that costochondritis was the likely source of Miles's pain. (*Id.* ¶ 131). Costochondritis is an inflammation of the cartilage connecting the ribs to the sternum, resulting in pain similar to a heart attack. *See Costochondritis*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/costochondritis/symptoms-causes/syc-20371175 (last visited May 27, 2026). The physician assistant planned to prescribe Naproxen. (SMF ¶ 131).

Miles reported rib pain to a physician assistant again in July 2022; the physician assistant determined it was rib pain and planned to schedule a chest x-ray. (*Id.* ¶ 133). On September 27, 2022, Miles was seen by a nurse practitioner in the prison's cardiac

chronic clinic. (*Id.* ¶ 134). He reported lower back pain and a rash, but the provider determined that his cardiac condition was stable. (*Id.*). Miles was transferred to Menard Correctional Center in April 2023. (*Id.* ¶ 136).

## LEGAL STANDARDS

Summary judgment is appropriate where there is no genuine dispute of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In determining whether a genuine issue of fact exists, the Court views the evidence and draws all reasonable inferences in favor of the non-moving party. *Ziccarelli v. Dart*, 35 F.4th 1079, 1083 (7th Cir. 2022). Once the moving party sets forth the basis for summary judgment, the burden shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue of fact for trial. Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323.

## DISCUSSION

In his complaint, Miles alleges that Dr. Myers was deliberately indifferent to his chest pain in violation of the Eighth Amendment. The Eighth Amendment's proscription against cruel and unusual punishment "includes a right to adequate medical care." *Berry v. Peterman*, 604 F.3d 435, 439 (7th Cir. 2010). Long ago, the Supreme Court made clear that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment and that

such indifference may give rise to a claim under section 1983." *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002) (citing *Estelle v. Gamble,* 429 U.S. 97, 104-05 (1976)). An Eighth Amendment claim for inadequate medical care has two elements: a plaintiff must show "(1) that he suffered from an objectively serious medical condition; and (2) that the individual defendant was deliberately indifferent to that condition." *Berry*, 604 at 440. Additionally, as with any other section 1983 claim, a plaintiff must demonstrate "that the violation *caused* the [] injury or damages." *Roe v. Elyea*, 631 F.3d 843, 864 (7th Cir. 2011) (citing *Harris v. Kuba*, 486 F.3d 1010, 1014 (7th Cir. 2007)).

In his motion for summary judgment, Dr. Myers elides the issue of whether Miles's chest pain constituted an objectively serious medical condition. Instead, he contends that no reasonable jury could find that he was deliberately indifferent to that ailment. (Doc. 43, p. 20). He also argues that Miles did not suffer any injury.

"Deliberate indifference occurs when a defendant realizes that a substantial risk of serious harm to the prisoner exists, but the defendant disregards that risk." *Berry*, 604 F.3d at 440. "[A] plaintiff does not need to show that the official intended harm or believed that harm would occur." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016). Rather, he must provide evidence that the defendant "*actually* knew of and disregarded a substantial risk of harm." *Id.* (emphasis in original). The standard involves a higher degree of culpability than medical malpractice because a "mistake in professional judgment cannot be deliberate indifference." *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016); *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014).

Proving deliberate indifference "is a high bar 'because it requires a showing [of] something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" *Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022) (quoting *Rosario v. Brawn*, 670 F.3d 816, 821 (7th Cir. 2012)). "By definition a treatment decision that's based on professional judgment cannot evince deliberate indifference because professional judgment implies a choice of what the defendant believed to be the best course of treatment." *Whiting*, 839 F.3d at 662. But "where evidence exists that the defendant knew better than to make the medical decision that he did," deliberate indifference may be established. *Id.* (cleaned up). Furthermore, a prisoner need not show that he was ignored entirely to make out a claim, particularly in situations where the care he received was "so blatantly inappropriate as to evidence intentional mistreatment." *Greeno v. Daley*, 414 F.3d 645, 654 (7th Cir. 2005) (quoting *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996)).

Here, the undisputed facts make clear that Miles did not complain of chest pain to any provider until January 8, 2022—after he was released from the prison's health care unit where he was treated for the blood clot. To the extent Miles brings a claim for that period, no reasonable jury could find that Dr. Myers exhibited deliberate indifference. After all, "there can't be *deliberate* indifference if the indifferent person did not know what harm he was being indifferent to." *Hayes v. Scott*, 854 F.3d 915, 916 (7th Cir. 2017).

Once Miles *did* complain of chest pain, a nurse performed an EKG and determined that he was not having a heart attack. There is no evidence in the record to suggest that Dr. Myers was present when Miles first reported chest pain or was otherwise aware of it. Notably, his medical records do not indicate who ordered the EKG *or why*. (SMF ¶ 90).

Dr. Myers did review the results of the EKG on January 11, 2022, and determined that follow-up care was not necessary because, based on his medical judgment, the EKG did not suggest Miles was suffering from a heart condition. (*Id.* ¶¶ 99-100). Again, no reasonable jury could conclude based on the undisputed evidence in the record that Dr. Myers was aware Miles had been experiencing chest pain at all. And to the extent he could have surmised from the mere *existence* of an EKG in Miles's file that he was experiencing chest pain requiring treatment, Miles's claim sounds in malpractice, which does not suffice to establish deliberate indifference. *Pyles*, 771 F.3d at 409.

Miles did expressly inform Dr. Myers that he was experiencing chest pain on March 8, 2022. (SMF ¶ 110). But when Dr. Myers informed Miles that he needed an EKG to determine whether the chest pain was connected to a heart condition, Miles became argumentative and refused it. (*Id.* ¶¶ 114-15). Miles reacted similarly when he reported chest pain to nurses on two subsequent occasions and had to be removed from the prison's health unit by security. (*Id.* ¶¶ 119, 121). Rather than exhibiting deliberate indifference to Miles's pain, these facts indicate that Dr. Myers and other medical providers *attempted* to furnish treatment and explained to Miles that an EKG was the first step in a process intended to rule out heart-related issues. (*Id.* ¶ 114). To the extent Miles felt that an EKG was unnecessary, he runs up against the Seventh Circuit's consistent instruction that mere disagreement with a doctor's medical judgment does not amount to deliberate indifference. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Moreover, "[t]he Seventh Circuit has [] held that a defendant is not liable for deliberate indifference where an inmate refuses treatment or is non-compliant." *Manley v. Wexford Health Sources,*

Page 8 of 10

*Inc.*, No. 23-3146, 2025 WL 2687012, at *13 (S.D. Ill. Sept. 19, 2025) (citing *Poole v. Issacs*, 703 F.3d 1024, 1027-28 (7th Cir. 2012); *Pinkston v. Madry*, 440 F.3d 879, 892 (7th Cir. 2006); *Cherry v. Berge*, 98 F. App'x 513, 515 (7th Cir. 2004)). Dr. Myers cannot be faulted for failing to do more for Miles's pain when Miles himself voluntarily declined treatment. *See Munson v. Newbold*, 46 F.4th 678, 681-82 (7th Cir. 2022) (finding that a provider was not deliberately indifferent where the prisoner left to take a legal call before treatment could be completed). It is likely that Miles would have received further evaluation and treatment if he had complied with Dr. Myers's request to complete an EKG to rule out heart problems rather than refuse.

Miles did not see Dr. Myers again until April 5, 2022, when he presented with swelling in his left leg. (SMF ¶ 123). It is undisputed that Dr. Myers developed a plan to treat the swelling, and that Miles never saw Dr. Myers again after that encounter. (*Id.* ¶¶ 126-27). Although Miles again visited the health unit for chest pain on several occasions, he was not treated by Dr. Myers. Nothing in the record suggests Dr. Myers was *aware* Miles was experiencing ongoing chest pain during or after the April 5 appointment or was deliberately indifferent to it.

Because no reasonable jury could find that Dr. Myers was deliberately indifferent to Miles's chest pain, he is entitled to summary judgment.

## CONCLUSION

For these reasons, Dr. Myers's motion for summary judgment (Doc. 42) is **GRANTED**. The Complaint is **DISMISSED with prejudice**. Plaintiff's motion for a bench trial (Doc. 38) is **DENIED as moot**. The Clerk of Court is **DIRECTED** to enter

judgment accordingly and close this case.

**IT IS SO ORDERED.**

**DATED:   May 28, 2026**

NANCY J. ROSENSTENGEL
United States District Judge